IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Patrick Webster, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 23-cv-3026 |
| Bunge-SCF Grain, LLC, | ) ) ) |
| Defendant. | ) ) |

OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

Before this Court is Defendant Bunge-SCF Grain LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Request for Injunction (Doc. 22) and Plaintiff's "Motion to Deny the Motion of the Defendant to Dismiss the Plaintiff's First Amended Complaint and the Reply Filed by Defendant," (Doc. 31). For the following reasons, Defendant's Motion to Dismiss (Doc. 22) is GRANTED and Plaintiff's Motion to Deny (Doc. 31) is DENIED.

**I.     PROCEDURAL BACKGROUND**

On February 2, 2023, Defendant filed a notice of removal to this Court. (Doc. 1). On February 9, 2023, Defendant filed a Motion to Dismiss. (Doc. 5). Plaintiff responded to the Defendant's Motion to Dismiss, (Doc. 9), and later filed a Motion for Leave to File his First Amended Complaint. (Doc. 13). On July 11, 2023, this Court granted Plaintiff's Motion for Leave to File his First Amended Complaint and denied Defendant's Motion to Dismiss as moot. (Doc. 17 at 7). This Court specifically stated, "Defendant will have an

opportunity to file a new motion to dismiss in response to the Amended Complaint, if one is necessary." (*Id.*).

On July 11, 2023, Plaintiff filed his First Amended Complaint and Request for Injunction. (Doc. 20). In his Amended Complaint, Plaintiff alleges that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").[1] (Doc. 20 at 39-52). Plaintiff also requested a temporary injunction to prevent Defendant from filing a suit against Plaintiff for breaching the contract underlying these proceedings. (*Id.* at 52-53).

On July 26, 2023, Defendant filed its Motion to Dismiss, arguing that Plaintiff is not a consumer and cannot satisfy the "consumer nexus" test as required by the ICFA. (Doc. 22 at 5-12). On August 8, 2023, Plaintiff filed his Response, arguing that he is a consumer and can satisfy the consumer nexus test. (Doc. 25 at 6). Plaintiff also included "additional paragraphs discussing the other methods that allow the Plaintiff to utilize the statues [sic] consisting of 815 ILCS 505 and 815 ILCS 510." (*Id.*). Defendant argues in its Reply that Plaintiff made fatal admissions in his Response and cited to inapposite law and legal theories. (Doc. 29 at 1-5).

---

[1] Plaintiff's Amended Complaint lists eight "counts" related to the ICFA, which are as follows: (1) "This Count is directed to the construction of the act requiring liberal construction pursuant to 505/11A;" (2) "This cause of action is for the purpose of establishing pursuant to 505/Section1(B), (C), (E), and (F) for the plaintiff to have standing to pursuant claims against the defendant in this proceeding as a consumer;" (3) 'This cause of action is directed to the definition of the term nexus, Section 505/Section 1, (e.);" (4) "This cause of action is based on the use of a deceptive practice being a violation of 505/Section 2;" (5) "This cause of action constitutes an unfair practice pursuant to 505/Section 2 and is an unfair document referred to as a forward contract or HTA as set forth herein;" (6) "This cause of action is brought as to the waiver or modification of the Act causing any contract failing to comply with the act to be void. 505/10c;" (7) "This cause of action is a cause of action for actual damage in accordance with 505/10(a);" (8) "This cause of action is for relief pursuant to the statute for attorney fees and costs in accordance with Section 510/10a(c) allowing attorney fees and costs." (Doc. 20 at 29-54).

On September 19, 2023, Plaintiff filed a motion titled "Motion to Deny the Motion of the Defendant to Dismiss the Plaintiff's First Amended Complaint and the Reply Filed by Defendant," and a proposed order denying Defendant's Motion to Dismiss. (Doc. 30; Doc. 31). On September 27, 2023, Defendant filed a Response arguing that Plaintiff's filings are duplicative and not authorized. (Doc. 32 at 1-3). Additionally, Defendant requested reimbursement of Defendant's costs and fees pursuant to 28 U.S.C. § 1927 because Plaintiff has multiplied the proceedings in an unreasonable and vexatious manner. (Doc. 32 at 3-4).

## II. FACTUAL BACKGROUND

In 2021, Plaintiff and Defendant entered into a contract, wherein Plaintiff agreed to deliver soybeans and corn to Defendant. (Doc. 20 at 20). In February of 2021, Plaintiff asked Defendant "about cancelling the balance of the contracts" to try to "take advantage of stronger prices." (*Id.* at 69). Defendant responded that if the contracts were cancelled, Plaintiff would owe the market difference as of the cancellation date, in accordance with the contract. (*Id.*). In June 2022, after Plaintiff failed to deliver the products, Defendant cancelled the contract and invoiced Plaintiff for $695,067.25 for the market difference. (*Id.* at 22). Thereafter, Defendant sent Plaintiff a proposed settlement. (*Id.* at 20).

In his First Amended Complaint, Plaintiff alleges that Defendant engaged in deceptive actions during the settlement negotiations by failing to disclose "hidden benefits" during settlement negotiations, which resulted in potential savings because Defendant was no longer required to handle the undelivered grain. (Doc. 20 at 22). Plaintiff surmises that Defendant saved $85,511.64 in "transportation savings, elevator

handling, electrical costs, personnel and management costs, transportation costs from the elevator and other related capital costs." (*Id.*). Plaintiff also alleges unfair and oppressive actions by Defendant in the form of its terms and conditions attached to the underlying contracts with Plaintiff. (*Id.* at 24-29).

### III.    MOTION TO DENY

In his Motion to Deny, Plaintiff states that Defendant's Motion to Dismiss should be denied because it "follows the same line of attack as raised by the Defendant in [the first Motion to Dismiss]." Plaintiff believes that the Motion to Dismiss should be denied because this Court's prior order denied Defendant's motion to dismiss as moot. Plaintiff ignores the fact that this Court explicitly stated in its July 11, 2023 Order, "Defendant will have an opportunity to file a new motion to dismiss in response to the Amended Complaint, if one is necessary" and made no determination regarding the merits of Defendant's arguments. Therefore, Plaintiff's Motion to Deny (Doc. 31) is denied.

In its Response to the Motion to Deny, Defendant requests reimbursement of Defendant's Costs and Fees pursuant to 28 U.S.C. § 1927 on the basis that Plaintiff has multiplied the proceedings in an unreasonable and vexatious manner. As a result of Defendant's request, this Court directed Plaintiff to respond to Defendant's Motion for Sanctions. (Text Order, Nov. 13, 2023). On November 16, 2023, Plaintiff filed a Response to Defendant's demand for sanctions, arguing that, pursuant to "Rule 3," Section 1927 does not apply without panel notice under Rule 4. Plaintiff also clarifies that it was not his intent to use the Motion to Deny as a way "to harass or disturb the Defendants but

only to correct what Plaintiff believed to be improper filings by the Defendant where they repeated the same Motions even after the Courts Order." (*Id.* at 3).

Section 1927 states,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 is intended "to deter frivolous litigation and abusive practices by attorneys and ensure that those who create unnecessary costs also bear them." *Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citations omitted).

The Seventh Circuit has explained that sanctions pursuant to Section 1927 are appropriate when an attorney has, *inter alia*, "pursued a claim that is without a plausible legal or factual basis and lacking in justification, or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal citations and quotations omitted).

Plaintiff's argument appears to be based on Rule 3 of the Third Circuit's Rules of Attorney Disciplinary Enforcement, which has the same title and phrasing as the rule Plaintiff relies on. *See* 3rd Cir. LAR, App. II, Rule 3. However, the practices and rules of other courts are not binding on this Court. Even if this Court construes Plaintiff's argument broadly and interprets it as a request for notice and an opportunity to be heard, Plaintiff has been given both. Plaintiff had ample notice that Defendant was seeking sanctions—both because of the content of Defendant's response and this Court's text

order. Plaintiff was also given an opportunity to respond and took advantage of that opportunity. This satisfies the requirement that Plaintiff be given notice and an opportunity to be heard before Section 1927 sanctions are imposed. *See Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006).

The Seventh Circuit has stressed that Section 1927 "does not provide a generalized substantive remedy for attorney misconduct wherever and in whatever context it may occur." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006). Although Plaintiff's Motion to Deny in this case borders on frivolous, it caused comparatively minimal harm. The parties were already engaged in briefing the Motion to Dismiss arguments, and the Motion to Deny was filed during that briefing period. Moreover, "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions [even if] it has found unreasonable and vexatious conduct." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004). In light of this high standard, the Court is not inclined to sanction Plaintiff's counsel for making an argument based on a misreading of this Court's order. The Court does admonish Plaintiff's counsel to be more diligent in his reading of the Court's orders.

IV. **MOTION TO DISMISS**

    **A. Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most

favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458.

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Complaints alleging a violation of the ICFA are analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading "ordinarily requires describing the who, what, when, where, and how of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (internal quotations omitted).

**B. Analysis**

Defendant argues dismissal is appropriate because Plaintiff is not a consumer and cannot satisfy the "consumer nexus test" under the ICFA.

"To succeed in a private cause of action under Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that

the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 190 (2005) (internal quotation marks and citation omitted). To have standing to bring a claim under the ICFA, a plaintiff must be a consumer or have a consumer nexus. *Breeze v. Bayco Products Inc.*, 475 F.Supp.3d 899, 906 (S.D. Ill. July 30, 2020); *see also Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018).

The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The term "person" includes "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c). The term "merchandise" includes "any object, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 ILCS 505/1(b).

In his Amended Complaint, Plaintiff alleges that he and Defendant entered into a contract in which Plaintiff would sell his corn and soybeans to Defendant and deliver them to Defendant's grain elevator. (Doc. 20 at 16-17). Plaintiff also stated, "[o]nce the grain was delivered to the elevator, it became the obligation of the [Defendant] to process, transport, and market the grain." (*Id.* at 18). Plaintiff argued in his Amended Complaint that he "is purchasing a service for his own needs." (*Id.* at 34). Plaintiff thereafter

explained that, "by giving up his right to sell grain elsewhere and committing to Contract with BSG for the fall harvest grain has done so in exchange for the right to get a fixed price for the fall harvest. This results in a service being performed by BSG where BSG provides the service of guaranteeing the price to the Plaintiff for the fall delivery and further guaranteeing to the Plaintiff somewhere to sell his grain." (*Id.* at 35).

Plaintiff does not contend that he bought a good, service, or any other merchandise from Defendant. To avoid the issue that Plaintiff is not the buyer of merchandise, Plaintiff compares his situation to that of insurance providers. In *Leona's Pizzeria, Inc. v. Northwestern Nat. Cas. Co.*, 203 F.Supp.2d 930, 933 (N.D. Ill. May 21, 2002) (internal citations omitted), the Northern District recognized, "the sale of insurance is clearly a service and insureds are thus consumers and within the protection of the Consumer Fraud Act." This reasoning is logical because insurance companies provide a service, financial protection, in exchange for payments.

Plaintiff argues that Defendant is also providing a service to him by ensuring that he will be able to sell his grain for a fixed price. (Doc. 20 at 35). Even though Defendant is providing money to Plaintiff, that alone does not transform Defendant into a service provider. Unlike insurance companies, Defendant is not accepting grain as a form of payment for a service that it would later provide to Plaintiff. Instead, Plaintiff is receiving money for his grain. His business certainly benefits from having a buyer, but that benefit alone does not mean that he is receiving a service. Although Plaintiff attempts to contort the facts to turn himself into the consumer, that is simply not the case.

Plaintiff alternatively argues that he has standing under the ICFA because he meets the consumer nexus test. (Doc. 20 at 37). "[T]he 'any person' language in the ICFA means that businesses can sometimes sue one another under the statute, but a business plaintiff under the ICFA must show a 'nexus between the complained of conduct and consumer protection concerns,' which we refer to here as the 'consumer nexus test.'" *Cmty. Bank of Trenton*, 887 F.3d at 823, *quoting Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). To establish an implication of consumer concerns, plaintiffs must plead and otherwise prove:

> (1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations… concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.

*Brody v. Finch Univ. of Health Scis./Chi. Med. Sch.*, 298 Ill.App.3d 146, 160 (2d Dist. 1998).

Plaintiff argues that Defendants' parent company is one of four companies that control 90% of the grain trade, meaning "all people everywhere" are affected by the policies of those four companies. (Doc. 20 at 38). Because of this, Plaintiff argues that the net effect is "all products made from the grains that appear in the grocery store, all products that are fed to livestock for fattening beef cattle or hogs are impacted by the final grocery store price because the price of the grains is controlled by BSG." (*Id.*). Plaintiff also contends that grain is connected to the "substantial unrest" recently regarding the price of eggs, and explains, "[e]ggs are the result of laying chickens which are substantially and almost totally dependent on ground corn for food or feed along with some supplemental materials." (*Id.* at 39). Because the price of feed impacts the price

of eggs, the contract between Plaintiff and Defendant "directly impacts all individuals in the State of Illinois that purchase eggs." (*Id.*).

Plaintiff's argument is similar to an argument that was made in *Stepan Co. v. Winter Panel Corp.*, 948 F.Supp. 802, 806 (N.D. Ill. Dec. 26, 1996), wherein the defendant argued that the consumer nexus test was satisfied because plaintiff's product—a foam-based product designed to avoid the use of CFC pollutants—would eventually be incorporated into insulation panels and used in personal residences. The district court rejected the argument that there was a consumer nexus simply because consumers will ultimately use a product. *Stepan Co.*, 948 F.Supp. at 807. The court aptly noted, "Almost every product sold by one commercial party to another will ultimately be sold to or otherwise effect a consumer. Consequently, if allegations such as [plaintiff's] are sufficient to bring the claim within the ambit of the Act, the Act would apply to nearly all commercial transactions, a result contrary to the intent of the legislature as presently interpreted." *Id.*

Plaintiff's arguments in this case are likewise flawed. The fact that consumers may eventually purchase products made from the grain is not sufficient to establish a consumer nexus. The same is true for Plaintiff's tenuous argument that the price of eggs is impacted by grain sales. *See Breeze*, 475 F.Supp.3d at 907 ("The connection between a defendant's representations and the ultimate consumer cannot be too tenuous). Moreover, the settlement negotiations underlying this complaint do not implicate consumer concerns. *See Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 n.79 (7th Cir. 2017) (finding "claim[s] arising out of alleged misrepresentations to an opposing party during the course of litigating," including settlement negotiations, do not

"implicate[ ] consumer protection concerns."). Therefore, Plaintiff cannot establish standing under the ICFA for his challenge to the contractual terms. Accordingly, this Court need not address the remaining contentions in Plaintiff's response, as the arguments are related to the merits of his ICFA claims.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 22) is GRANTED, and Plaintiff's Motion to Deny the Motion of the Defendant to Dismiss the Plaintiff's First Amended Complaint and the Reply Filed by Defendant (Doc. 31) is DENIED. Defendant's request for attorneys' fees pursuant to 28 U.S.C. § 1927 is DENIED. The Clerk shall enter judgment.

ENTER: January 30, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE